**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-1616-RBJ

AGAZI ABAY,
GABRIEL THORN,
AMY SCHNEIDER, and
MICHAEL McDANIEL, on behalf of themselves
   and other similarly situated individuals

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**CITY AND COUNTY OF DENVER'S EMERGENCY MOTION FOR MODIFICATION OF TEMPORARY RESTRAINING ORDER**

---

Defendant City and County of Denver ("Denver"), through undersigned counsel, submits the following Emergency Motion for Modification of Temporary Restraining Order as follows:

**CERTIFICATE OF CONFERRAL**

Defendant's counsel attempted to confer with counsel for Plaintiffs via email on the evening of June 5, 2020, before filing this Motion. At the time of filing this Motion, the undersigned had not received a position from Plaintiffs. The urgency of the relief requested in the Motion necessitated its immediate filing without delay, and therefore Defendant is unable to state Plaintiffs' position in this Motion.

1.    When a final judgment has not been entered, a trial court retains the power under Federal Rule of Civil Procedure 54(b) to reconsider and modify its interlocutory

orders. *Ziankovich v. Members of Colorado Supreme Court*, No. 20-CV-0158-WJM-SKC, 2020 WL 2747745, at *1–2 (D. Colo. May 27, 2020) (citing *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1148 (10th Cir. 1991)). The grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Id.* (citing *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). A motion to reconsider does not serve to "allow a party merely to reargue an issue previously addressed by the court when the reargument merely advances new arguments or supporting facts which were available for presentation at the time of the original argument." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996). However, when the motion clearly demonstrates manifest error of law or fact or presents newly discovered evidence it is appropriate. *See National Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F. Supp. 2d 1250, 1256 (D. Colo. 2000). These circumstances are present here.

2.  The Court entered a Temporary Restraining Order shortly before 9:00 p.m. on Friday, June 5, 2020, after a brief hearing, with less than one hour's notice, and the requirement of submission of proposed orders not later than 7:30 p.m., less than one hour after the brief hearing concluded. The parties were not permitted to present evidence during the hearing. Instead the Court only posed questions to the parties and the questions did not encompass several of the limitations imposed by the Court's TRO. As a result, Denver did not have the opportunity to explain to the Court why certain restrictions might pose substantial challenges or might not be able to be complied with, leaving officers the inability to defend themselves and others from unlawful aggressors infiltrating protest activities. In fact, the Court's Order restricts the ability of the Denver Police Departments to use specific types of force and includes the requirement that the Denver

Police Department—and all other law enforcement agencies who have responded to assist the Denver Police Department—to refrain from or limit specific types of force used to protect protestors and officers alike from assaultive conduct of aggressors as well as to protect destruction or public and private property by individuals who are not present to engage in peaceful protesting.

3. Denver respectfully requests that the Court consider this Motion and modify its Order to address the two most troubling aspects of its Order. Without these requested modifications, which Denver would have explained to the Court had it been given the opportunity, the safety of protestors and law enforcement officers may be significantly compromised. Therefore, Denver respectfully requests that the Court modify two provisions of the Order[1] based upon the following.

4. Denver first requests that the Court modify the provision that "temporarily enjoins the Denver Police Department and officers from other jurisdictions working with Denver Police Department officers from using chemical weapons or projectiles unless an on-scene supervisor at the rank of Captain or above specifically authorizes such use of force in response to specific acts of violence or destruction of property that the command officer has personally witnessed." This is not feasible under the command structure of the Denver Police Department because currently there are only four police officers with the rank of Captain and one Commander responsible for the downtown area. Other commanders are also responsible for their assigned districts. Therefore, the Denver Police Department needs to be able to utilize its Lieutenants, who also have a command

---

[1] Denver also wants to correct the record where the Court states in its Order that the Denver Police Department has used rubber bullets during operations related to the protests. Denver does not use such munitions. This was addressed by counsel for Denver who highlighted this allegation by Plaintiff as one that is facially incorrect.

rank, to ensure that authorizations of reasonable and necessary force may be made when necessary. Without this ability, officers will not be able to receive the immediate direction they may need when faced with dangerous circumstances and will not be able to act to protect themselves or others. Notably, Plaintiffs' Complaint [Doc. # 4, p. 25], filed yesterday, does not raise the issue of command staff supervision in the categories it asks to be enjoined through a temporary restraining order and Plaintiffs' Motion for Temporary Restraining Order [Doc. #10, pp. 1-2], filed just before 2:30 p.m. today, also does not seek such relief.

      5.      During the hearing today, the Court asked counsel for Denver only what the highest level of the Denver Police Department command staff was "on the street" during the protests and was informed that was the rank of Commander (and an explanation that the rank of Captain was below Commander and above Lieutenant). There was no discussion about this information in the context of approving specific types of force by those command staff officers or personal observation of the underlying basis for the use of force. If there had been, Commander Phelan was available to assist the Court with its understanding of this matter so that its Order would have been more fully informed. Moreover, and critically, there was no discussion, or reason counsel for Denver would have inferred that discussion was necessary, of the limited staffing levels at these ranks that would preclude Denver from being able comply with the unrequested relief entered in the Order.  Accordingly, Denver now asks the Court to modify this obligation under the Order to permit officers at the rank of Lieutenant to authorize the deployment of chemical agents or projectiles in response to specific acts of violence or destruction of property that have been personally witnessed. This will enable Denver Police Department officers and those other law enforcement agencies who have willingly come to the City and County of Denver to assist with

protecting protestors to provide the necessary direction to officers without compromising safety. Therefore, Denver believes that if the Court is willing to consider and make this modification that it will still meet the Court's purpose ensuring that command staff—who are present at the scene—are directly involved in the decision making.

6. Denver next requests that the Court modify the following provision of the Order: "All officers deployed to the demonstrations or engaged in the demonstrations must have their body-worn cameras recording at all times, and they not intentionally obstruct the camera or recording." [Doc. # 16 at p. 10, ¶ 4]. This relief was also not requested in the Motion for Temporary Restraining Order, and Denver did not have the opportunity to present any evidence or argument addressing the DPD's ability to comply with such a requirement. Denver respectfully requests that the Court modify this provision for two main reasons. First, Denver requires the aid of other jurisdictions to assist with crowd control for large-scale protests such as those currently occurring that require more officers than Denver has available to assist, especially based upon the number of hours Denver police officers are working each day, and not all of those jurisdictions have body cameras. As a result, complying with the Order regarding body cameras for all law enforcement officers requires Denver to refuse the much-needed assistance of agencies whose law enforcement officers do not have such devices. The inability to use other officers to assist with crowd control and the protection of property against agitators who are not in Denver to engage in peaceful protest activities, but instead are present to engage in unlawful activities, including acts of violence or property destruction, puts the Denver Police Department at risk of having an insufficient number of officers on scene to adequately maintain the safety and security of peaceful protestors, property, and the officers themselves.

7.     Second, the technical limitations of the body cameras prevent constant recording and saving of video for extremely long durations. The body cameras used by members of the Denver Police Department officers have two modes, a "Buffering Mode" and an "Event Mode." In the Buffering Mode, the camera continuously loops a video recording for up to 30 seconds before recording is started by an officer. While buffering, video only (no audio) is being recorded. In the Event Mode, the camera begins saving the recorded buffered video and continues to record both audio and video. Pursuant to DPD's body camera policy, attached hereto, all officers are required to place the body camera into Event Mode during various types of incidents, including "any encounter that becomes adversarial," to ensure that such incidents are captured and recorded. [*See* Ex. A, DPD Body Worn Camera Policy, § 119.04(3)(1)]. Requiring officers to have their cameras activated in Event Mode for the duration of a protest event, many of which have lasted several hours from the morning through well into the night, would shorten the camera's battery life and storage limits, leaving the functionality of the devices inaccessible at the later hours of officers' shifts, when they may most urgently need the devices to record critical incidents. As a result, the requirement for all officers to have body worn cameras activated at all times is not a practically workable option. Because of these practical limitations, and because Plaintiff presented no evidence in their Motion or at the hearing suggesting that the constant activation of body cameras reduces the number of improper force incidents, Denver respectfully requests that the Court modify its order by eliminating the requirement regarding body cameras in Paragraph 4 of Page 10 of the Order.

WHEREFORE, Denver respectfully requests that the Court enter an order granting this Emergency Motion and modifying its Order on Plaintiffs' Motion for Temporary Restraining

Order [Doc. #16] to allow officers at the rank of Lieutenant to authorize the deployment of chemical agents or projectiles in response to specific acts of violence or destruction of property that have been personally witnessed and to eliminate the requirement of continuous activation of body cameras throughout the duration of a protest incident.

DATED this 5th day of June, 2020.

Respectfully submitted,

*s/ Melanie B. Lewis*
Melanie Lewis, Assistant City Attorney
Conor D. Farley, Assistant City Attorney
Denver City Attorney's Office, Civil Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone:(720) 913-3100
Facsimile: (720)913-3182
Email:  melanie.lewis@denvergov.org
            conor.farley@denvergov.org
*Counsel for Defendant City and County of Denver*

## CERTIFICATE OF SERVICE

I certify that on this 5th day of June, 2020, I electronically filed the foregoing **CITY AND COUNTY OF DENVER'S EMERGENCY MOTION FOR MODIFICATION OF TEMPORARY RESTRAINING ORDER** with the Clerk of the Court using the CM/ECF system and emailed a true and accurate copy of the same to the following:

Edward Milo Schwab, Esq.
Ascend Counsel, LLC
Email: milo@ascendcounsel.co

Ross Ziev, Esq.
The Law Offices of Ross Ziev, P.C.
Email: ross@helpincolorado.com

Laura B. Wolf, Esq.
John Michael Guevara, Esq.
Wolf Guevara, LLP
Email: laura@wolfguevara.com
          jm@wolfguevara.com

*s/ Melanie B. Lewis*
Denver City Attorney's Office