IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-1616-RBJ

AGAZI ABAY,
GABRIEL THORN,
AMY SCHNEIDER, and
MICHAEL McDANIEL, on behalf of themselves
and other similarly situated individuals

    Plaintiffs,

v.

CITY AND COUNTY OF DENVER,

    Defendant.

---

**DENVER'S COMBINED RESPONSE TO PLAINTIFFS' FORTHWITH MOTION TO EXTEND TEMPORARY RESTRAINING ORDER AND FORTHWITH MOTION TO AMEND TEMPORARY RESTRAINING ORDER**

---

Defendant City and County of Denver ("Denver"), through undersigned counsel, submits the following Combined Response to Plaintiffs' Forthwith Motion to Extend Temporary Restraining Order [Doc. # 25] and Forthwith Motion to Amend Temporary Restraining Order [Doc. # 26].

**INTRODUCTION**

Plaintiffs have filed two "Forthwith" motions, one seeking to expand the Court's Order on Motion for Temporary Restraining Order ("TRO") [Doc. #16], the other seeking to extend it. Plaintiffs insist that the terms of the TRO should be amended and expanded on an emergency basis to order Denver to provide them with immediate disclosure of documents and video, outside the

rules of discovery or the requirements of Colorado law. [Doc. #26.] Plaintiffs also maintain that the TRO must be extended beyond Friday, June 19, 2020 because "nothing has changed" since the start of the demonstrations. [Doc. #25, p. 5.] Simultaneously, Plaintiffs have filed a "Motion to Convert Temporary Restraining Order into Preliminary Injunction," requesting a preliminary injunction that incorporates both the TRO and the new terms proposed in their motion to amend. [Doc. #27.]

Plaintiffs' requests to amend the TRO "forthwith" and extend it indefinitely are an attempt to circumvent Fed. R. Civ. P. 65 and obtain what effectively would be an *ex parte* preliminary injunction. This is improper. Plaintiffs have already separately requested a preliminary injunction. Denver is currently preparing a response to that motion on an expedited basis, and Denver should have the opportunity to be heard on that motion before any additional injunctive relief is granted. The motions to amend and extend should be denied.

## ARGUMENT

I.  **Plaintiffs are not entitled to an amended TRO that circumvents the rules of procedure, discovery rules and Colorado public-records law.**

Plaintiffs ask the Court to give them—or practically speaking, their counsel—"oversight" power over the Denver Police Department by expanding the terms of the TRO to "require [Denver] to: 1) inform Plaintiffs of any use of chemical agents/irritants or KIPs within twelve (12) hours of such use; 2) provide to Plaintiffs body cam footage from all officers present for the use of such force within 48 hours; and 3) provide to Plaintiffs all reports generated, including from the supervisor who authorized such force under the terms of the TRO, within 48 hours." [Doc. #26, p. 2.] Plaintiffs offer no authority for this sweeping request, no grounds to amend or "reconsider" the

TRO, and no good reason why they (instead of this Court) should be empowered to "enforce this TRO." [*Id.* at 6.]

As an initial matter, Plaintiffs' Motion fails to provide proper authority for the type of "amendment" they seek. Plaintiffs characterize their motion as a Rule 59 "motion to alter or amend judgment" (*id.* at 4), but a temporary restraining order is by its nature not a final judgment subject to that rule. *Vega v. Lappin*, No. 08-CV-01571-BNB, 2008 WL 4327358, at *1 (D. Colo. Sept. 18, 2008). While Rule 65(b) provides that a party *restrained* by an *ex parte* TRO may "move to dissolve or modify the order," that does not provide a mechanism for a party having obtained a TRO to subsequently expand or otherwise modify its terms. Nor is Denver aware of any such mechanism, short of seeking a preliminary injunction with notice and an evidentiary hearing.[1]

Even if Plaintiffs' motion is authorized (it is not) they offer no convincing reason why they should be entitled to accelerated and expanded discovery or a legal right to receive public records faster and with fewer restrictions than the Colorado Legislature has deemed appropriate for all other citizens. As described in their Motion, Plaintiffs wish to investigate an incident in which unidentified "demonstrators," not parties to this litigation, reported "that pepper spray had been used the previous evening by a Denver Police officer." [Doc. #26, p. 3.] Plaintiffs suggest that this might violate the TRO—even though they admit they have no evidence to support that contention, and the news report they submit with their motion indicates that the police were responding to physical danger, that a Lieutenant was on scene, and that a warning was given. [*Id.*; Doc. #26-3.]

---

[1] Plaintiffs describe their burden as a showing of an intervening change in the controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice. [Doc. #26, p. 4.] Even if this were the correct standard, Plaintiffs make no attempt to satisfy it aside from the conclusory statement that an adverse ruling "would be manifestly unjust." [*Id.* at 6.]

Discovery in this case has not begun. Thus—especially when Plaintiffs' counsel could not articulate or provide any basis to believe that the TRO in this case had been violated—Denver's counsel properly considered Plaintiffs to be in the same position as the many other citizens (journalists, nonprofit groups, potential claimants, and others) currently seeking documentation regarding the demonstrations, and treated their demand as a request for criminal justice records pursuant to the relevant statute. [Doc. #26-2; Doc. #26 p. 5.] Plaintiffs bristle at Denver's "suggest[ion] that Plaintiffs are mere members of society, allowed to request documents of public agencies subject to denials and limitations of public records requests as are contained in the CCJRA." [Doc. #26, p. 5.] But they do not explain why filing a purported class-action suit should immediately elevate them above the rules that apply to everyone else.

Plaintiffs may feel that the CCJRA and other public-records statutes are inadequate, flawed, or "onerous administrative hurdles." [*Id.* at 6.] Even so, a temporary restraining order or injunction would not be the proper remedy. In enacting the CCJRA, the Legislature considered the benefits of transparency, the needs of law enforcement, the requirements of privacy, and the rights of the accused, among many other factors. Plaintiffs do not challenge the validity or application of that law in this suit. Even had they done so, "courts of equity cannot, in their discretion, reject the balance that Congress has struck in a statute." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001).

The extremity of Plaintiffs' position is evident when compared with the balance struck by Colorado's Legislature when it considered this very issue and enacted a new "Law Enforcement Integrity" statute only last week. *See* "An Act Concerning Measures to Enhance Law Enforcement Integrity, and, in connection therewith, Making an Appropriation," Senate Bill 20-217 (June 12,

2020).² The provisions of the new law require public disclosure of video and other records of uses of force within 21 to 45 days—not 48 hours—and recognize the need to protect citizen privacy, ongoing investigations, and other factors that weigh against the sort of immediate disclosure sought by Plaintiffs here. *Id*. at § 24-31-902(2)(a-c). The Legislature struck this balance *in response to the same demonstrations at issue in this case*, and Plaintiffs fall far short of explaining why this Court should use its injunctive power to "reject th[at] balance" and short-circuit that determination. *Oakland Cannabis Buyers' Co-op.*, 532 U.S. at 497; *see Biodiversity Assocs. v. Cables*, 357 F.3d 1152, 1165 (10th Cir. 2004) ("The purpose of an injunction is to define and enforce legal obligations, not to freeze them into place. Thus, when Congress changes the laws, it is those amended laws—not the terms of past injunctions—that must be given prospective legal effect.").

As litigants in this Court, both Denver and Plaintiffs will be entitled to discovery under the longstanding parameters of the federal rules. *See, e.g.,* Fed.R.Civ.P. 26 & 37. When discovery commences, Plaintiffs will be entitled to request documents such as those they seek now. However, not even then will they be entitled to disclosure on demand "within 12 hours" or "within 48 hours." Nor would such disclosure be reasonably feasible, due to the volume of video and other documentation generated by such incidents and the practical and legal requirements of reviewing and redacting this data. Plaintiffs' rhetoric aside, compliance with the law and the regular rules of discovery does not represent an attempt "to avoid any accountability." [Doc. #26, p. 6.]

---

² Governor Polis has publicly stated that he will sign the bill into law. *See* "Colorado Police Reform Bill Passes, Now Heads to Governor's Desk," *CBS4 Denver* (June 13, 2020), *available at* https://denver.cbslocal.com/2020/06/13/colorado-police-accountability-bill-passes/.The bill text is at https://leg.colorado.gov/sites/default/files/documents/2020A/bills/2020a_217_rer.pdf.

Plaintiffs insist that without their requested "amendment," they "will not be able to fully enforce this TRO or any subsequent Preliminary Injunction." [Doc. #26, p. 6.] But the power to "enforce" is not Plaintiffs'. It is this Court's. No authority entitles Plaintiffs to claim enhanced disclosure or exemptions from the discovery rules. Their motion to "amend" the TRO should be denied.

## II. The TRO should not be extended, because conditions have changed.

This Court issued its TRO in this case on June 5; by operation of Rule 65, it expires on June 19. Plaintiffs moved for a preliminary injunction on the evening of June 16. [Doc. #27.] Plaintiffs simultaneously "move this Court to extend the [TRO] until such time as the Court makes a determination" on that motion. [Doc. #25, p. 7.]

"TROs are supposed to be just what the name suggests—temporary." *ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 801 (10th Cir. 2013); *see id.* ("Their normal life span is prescribed by rule as just a fleeting fourteen days, after which they may give way to preliminary injunction proceedings where notice and an opportunity to be heard is afforded both sides."). Rule 65(b)(2) provides that, for good cause shown, a court may extend a temporary restraining order. Fed.R.Civ.P. 65(b)(2); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 440 n.15 (1974). Courts have found good cause where, despite the parties' diligence, additional time is necessary to prepare for a preliminary injunction hearing, or where delay was outside of the control of the moving party. *Cuin v. Prudential Life Ins. Co.*, No. 08-CV-02614-PAB-KLM, 2008 WL 5273089, at *1 (D. Colo. Dec. 10, 2008). Although Plaintiffs here request an open-ended extension, the treatise they cite in support of their motion notes that "[t]he text of

Plaintiffs insist that without their requested "amendment," they "will not be able to fully enforce this TRO or any subsequent Preliminary Injunction." [Doc. #26, p. 6.] But the power to "enforce" is not Plaintiffs'. It is this Court's. No authority entitles Plaintiffs to claim enhanced disclosure or exemptions from the discovery rules. Their motion to "amend" the TRO should be denied.

## II. The TRO should not be extended, because conditions have changed.

This Court issued its TRO in this case on June 5; by operation of Rule 65, it expires on June 19. Plaintiffs moved for a preliminary injunction on the evening of June 16. [Doc. #27.] Plaintiffs simultaneously "move this Court to extend the [TRO] until such time as the Court makes a determination" on that motion. [Doc. #25, p. 7.]

"TROs are supposed to be just what the name suggests—temporary." *ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 801 (10th Cir. 2013); *see id.* ("Their normal life span is prescribed by rule as just a fleeting fourteen days, after which they may give way to preliminary injunction proceedings where notice and an opportunity to be heard is afforded both sides."). Rule 65(b)(2) provides that, for good cause shown, a court may extend a temporary restraining order. Fed.R.Civ.P. 65(b)(2); *Granny Goose Foods, Inc. v. Brotherhood of Teamsters,* 415 U.S. 423, 440 n.15 (1974). Courts have found good cause where, despite the parties' diligence, additional time is necessary to prepare for a preliminary injunction hearing, or where delay was outside of the control of the moving party. *Cuin v. Prudential Life Ins. Co.*, No. 08-CV-02614-PAB-KLM, 2008 WL 5273089, at *1 (D. Colo. Dec. 10, 2008). Although Plaintiffs here request an open-ended extension, the treatise they cite in support of their motion notes that "[t]he text of

Rule 65(b) seems to exclude any possibility that a temporary restraining order can remain in force beyond 28 days." 11A Fed. Prac. & Proc. Civ. § 2953 (3d ed.).

Plaintiffs maintain that good cause exists because while demonstrations continue, "[Denver's] conduct prior to the entry of the TRO remains unchanged," internet videos dating from the first four days of protests "remain unchanged and continue to point towards a real concern that the Denver Police … will continue to use these weapons in unlawful and unconstitutional ways," and the First Amendment "remains just as important today as it did when this Court entered the original TRO." [Doc. #25, pp. 5-6.] In short, "nothing has changed." [*Id*., p. 5.]

But Plaintiffs' contention is inaccurate. Conditions were already changing when Plaintiffs filed their Complaint and have continued to change since. Plaintiffs themselves admit that "injuries have been nearly eliminated" and that "demonstrations have continued without… property destruction or violence," and submit a news article that describes "a series of nights of relative calm." [*Id.* at pp. 6, 7; Doc. #26-3.] Even as this Court held its virtual hearing on the TRO on June 5, the curfew imposed by Mayor Hancock had expired, and violence had already decreased: as reported by the media, "[t]he protests had indeed become more peaceful by that Friday."[3]

Plaintiffs credit the TRO, but as early as June 2 news reports described the demonstrations in downtown Denver as having a "peaceful tone" and remarked that "[t]he demonstrations proceeded peacefully [Tuesday and Wednesday] nights without the clashes with police that marred

---

[3] Nathaniel Minor, "From 'I Can't Breathe' to "We Are Love,' the messages at Denver's protests are changing daily," *Denverite* (June 9, 2020) *available at*
https://denverite.com/2020/06/09/from-i-cant-breath-to-we-are-love-the-messages-at-denvers-protests-are-changing-daily/

7

earlier marches."[4] Since then, calm has generally prevailed and "[t]he demonstrations also became more organized and peaceful."[5] The curfew has not been extended and cases for curfew violations have been dismissed by the City Attorney. As acknowledged in media reports, demonstrations "became less confrontational and started to emphasize unity and peace."[6]

Moreover, as mentioned above, the Colorado Legislature last weekend enacted the new Law Enforcement Integrity statute. This new law incorporates the key elements of this Court's TRO as follows:

> In response to a protest or demonstration, a law enforcement agency and any person acting on behalf of the law enforcement agency shall not:
>
> (a) Discharge kinetic impact projectiles and all other non- or less-lethal projectiles in a manner that targets the head, pelvis, or back;
>
> (b) Discharge kinetic impact projectiles indiscriminately into a crowd; or
>
> (c) Use chemical agents or irritants, including pepper spray and tear gas prior to issuing an order to disperse in a sufficient manner to ensure the order is heard and repeated if necessary, followed by sufficient time and space to allow compliance with the order.

---

[4] Conrad Swanson, "Denver to end curfew even though George Floyd protests continue," *Denver Post* (June 5, 2020), *available a*t https://www.denverpost.com/2020/06/05/denver-curfew-expires-george-floyd-protests/; Shelly Bradbury & Elise Schmelzer, "Demonstrators take to Denver's streets on foot and in cars for eighth day of George Floyd protests," *Denver Post* (June 4, 2020), *available at* https://www.denverpost.com/2020/06/04/denver-protests-george-floyd-day-eight/ ("On a warm Thursday evening, marchers were even met by Denver police officers distributing cases of bottled water.").

[5] Conrad Swanson, "Denver to drop all curfew violation charges against protesters," *Denver Post* (June 10, 2020), *available at* https://www.denverpost.com/2020/06/10/denver-curfew-violations-charges-dropped-geroge-floyd-protests/.

[6] *Id.;* Minor, *supra* n.1.

8

https://leg.colorado.gov/sites/default/files/documents/2020A/bills/2020a_217_rer.pdf at § 24-31-905. This provision will take effect immediately upon signing by the Governor, who has publicly stated that he intends to sign the law promptly. The Legislature's passage of the law certainly changes the circumstances from the ones that existed on May 28, 2020 to June 1, 2020, the days upon which the Complaint rests its allegations.

In short, Plaintiffs have no basis to claim that Denver's conduct "remains unchanged and left unchecked, would likely resume at the expiration of this TRO." [Doc. #25, p. 5.] Their argument that good cause exists to extend the TRO because "the grounds for originally granting the temporary restraining order continue to exist" is without support.

Plaintiffs' only remaining argument is their repeated suggestion that upcoming Juneteenth celebrations "call for the extension of this TRO." [Doc. #25, p. 7.] This fails as a matter of chronology, as the TRO – entered late on June 5 – will not expire until Juneteenth is almost over. More troubling, Plaintiffs insinuate (again without support) that the celebrations are likely to be met with "the unlimited use of chemical and KIP weapons." [*Id.*] But this overlooks the important fact that Juneteenth celebrations have already begun—including the annual Denver Juneteenth parade this past Saturday—without any sign of violence. According to a media report, "Saturday, people of many different ages and races packed the streets, with nearly everyone in a mask. The whole vibe was a celebration, with a lot of non-Black people out to support the community."[7] Plaintiffs do not provide any grounds in support of their contention that Juneteenth celebrations or

---

[7] Brien Hollowell, "Denverites remember the past and celebrate Blackness at 2020 Juneteenth parade," *Denverite* (June 13, 2020), at https://denverite.com/2020/06/13/look-denverites-remember-the-past-and-celebrate-blackness-at-2020-juneteenth-parade/; *see also* Kevin Mohatt, "Photos: Denver Juneteenth Parade 2020," *Denver Post* (June 13, 2020), at https://www.denverpost.com/2020/06/13/denver-juneteenth-parade-photos/.

other future events will be marred by acts of violence or destruction of property that would re-create the conditions that existed in the earliest days of the protests at issue in this case.

Plaintiffs claim that "nothing has changed," but they are incorrect. They do not meet their burden to show good cause, and their request to extend the TRO should be denied.

## CONCLUSION

In tandem, Plaintiffs' two motions are an impermissible and unnecessary request for *ex parte* injunctive relief. Accordingly, and for all the above reasons, Denver respectfully requests that the Court deny both Plaintiff's Forthwith Motion to Extend Temporary Restraining Order and Plaintiffs' Forthwith Motion to Amend Temporary Restraining Order.

DATED this 17th day of June 2020.

Respectfully submitted,

*s/Geoffrey C. Klingsporn*
Melanie Lewis, Assistant City Attorney
Conor D. Farley, Assistant City Attorney
Geoffrey C. Klingsporn, Assistant City Attorney
Denver City Attorney's Office, Civil Litigation Section
201 W. Colfax Avenue, Dept. 1108
Denver, CO 80202-5332
Telephone:(720) 913-3100
Facsimile: (720)913-3182
Email: melanie.lewis@denvergov.org
       conor.farley@denvergov.org
       geoffrey.klingsporn@denvergov.org
*Counsel for Defendant City and County of Denver*

**CERTIFICATE OF SERVICE**

I certify that on this 17th day of June 2020, I electronically filed the foregoing **DENVER'S COMBINED RESPONSE TO PLAINTIFFS' FORTHWITH MOTION TO EXTEND TEMPORARY RESTRAINING ORDER AND FORTHWITH MOTION TO AMEND TEMPORARY RESTRAINING ORDER** with the Clerk of the Court using the CM/ECF system which will transmit a true and accurate copy of the same to the following:

Edward Milo Schwab, Esq.
Ascend Counsel, LLC
Email: milo@ascendcounsel.co

Ross Ziev, Esq.
Help in Colorado, Ross Ziev, PC
Email: ross@helpincolorado.com

*s/ Philip Jett*
Denver City Attorney's Office