d.    The ALPR cameras mounted to a vehicle are not adjustable. Officers will not try to move or reposition the cameras. If there is reason to believe the camera is out of alignment, the vehicle will be taken to the Electronic Engineering Bureau, the Fleet Management Section or the Investigative Technology Section. The three aforementioned are the only areas authorized to make adjustments to the equipment that supports the ALPR.

    e.    Problems with the ALPR software must be addressed by the Electronic Engineering Bureau.

**(3)**   DATA RETENTION AND INFORMATION SHARING:

    a.    ALPR data will be retained for a period of 730 days, except for any data deemed as evidence in a criminal investigation or if the department has been given official notice of a claim filed. Investigating officers are responsible for collecting and securing any data as part of a criminal investigation and ensuring the information is retained as part of the investigation.

    b.    The ALPR database is protected under the Federal Privacy Act of 1974 and officers will only access and search retained ALPR data in conjunction with a criminal investigation or criminal nexus – See OMS 102.05(3).

- Officers must enter an investigative reason prior to initiating any search within the database.
- Officers may only access records retained one year after the date of creation if there has been a notice of claim filed or other specific incident that may cause the record to become evidence in a felony criminal proceeding.

    c.    The release of ALPR database information to anyone other than a law enforcement agency is strictly prohibited and the initiation of such must come in the form of an official request to the department.

    d.    Officers sharing ALPR database information with another law enforcement agency may do so only for the purpose of an official investigation. However, if the requesting agency requires an official record of any information contained within the database, they will be directed to the Investigative Technology Section so that the request is documented and the information is properly released.

    e.    Any direct ALPR database connection, for the purposes of sharing ALPR database information with another law enforcement agency, will be administered by the Investigative Technology Section and must be approved by the Chief of Police (or designee).

### 119.04 BODY WORN CAMERA TECHNOLOGY

**(1)**   PURPOSE:

The body-worn camera (BWC) is an "on-the-body" audio and video recording system assigned to an officer as an additional means of documenting specific incidents in the field. The purpose of this policy is to establish procedures related to the use, management, storage, and retrieval of the data stored on the department-issued BWC. Specific uses of the BWC are:

    a.    To capture crimes in-progress, whether perpetrated against the officer or the community and to maintain this evidence for presentation in court.

    b.    To document initial police response, the discovery of evidentiary items and the actions of the police pursuant to an investigation, including calls for service or self-initiated police contacts that could result in an enforcement action.

    c.    To mitigate potentially confrontational interactions with members of the public through the presence of the BWC.

    d.    To prevent and resolve complaints made against officers during the course of their police duties.

**Exhibit 6**

      e.    To serve in training and performance feedback, ensuring the professionalism of all Denver Police officers.

**(2)** **DEFINITIONS:**

**BUFFERING Mode:** The BWC continuously loops a video recording for up to 30 seconds before the recording is started by the officer. While buffering, video only (no audio) is being recorded.

**EVENT Mode:** Once activated by pressing the EVENT button, the BWC saves the recorded buffered video and continues to record both audio and video.

**Evidence Transfer Manager (ETM):** Docking unit used to recharge and upload previously recorded audio and video (stored media) from the BWC. The ETM automatically transfers all stored media to evidence.com.

**Evidence.com:** An online, cloud-based digital media storage repository. All media is stored in a highly secure environment, accessible only by authorized personnel.

**BWC System Administrator:** The Investigative Technology Section is the BWC system administrator and they will maintain the integrity and efficiency of the data management and file retention systems.

**(3)** **POLICY:**

There are many situations where the activation of the BWC is appropriate and/or required and this policy is not intended to describe every possible circumstance. It is understood that not all situations will clearly start out as necessitating documentation by the BWC nor will all recorded events have a clear ending for when the BWC is no longer required. Officers are expected to follow departmental policy and procedure, utilizing ethical and legal discretion as well as good judgment when activating and deactivating the BWC.

All officers (sergeants and below in uniformed on-duty line assignments) are required to use the BWC system in accordance with the policies of the Denver Police Department. The assignments include sergeants, corporals, technicians, and patrol officers assigned to all six (6) police districts, Metro/SWAT, the Gang Unit, the Traffic Operations Section, and the Airport Police Bureau.

Effective July 1, 2017, all officers below the appointed rank of commander will utilize the BWC system while working uniformed off-duty assignments, except for captains and lieutenants assigned an off-duty command position (not performing the duties of a patrol officer or first line supervisor). This requirement also applies to all uniformed officers working in a volunteer (off-duty) capacity.

The Denver Police Department recognizes there are certain circumstances where officers in a proactive (non- dispatched) capacity may become involved in a situation requiring immediate action to prevent injury, make an arrest and/or prevent the destruction of evidence or escape. When these situations occur, officers must activate the BWC, unless doing so places them or others in jeopardy. If the immediate activation of the BWC is not feasible due to an immediate risk to the safety of the officer or others, the officer will activate the BWC at the first available opportunity after the immediate threat has been addressed.

    a.    Required Activation

        1.    All officers will place the BWC into EVENT mode after being dispatched and prior to arriving to the following calls for service and prior to any officer initiated contacts involving actual or potential violations of the law including:

            a.    Traffic stops

            b.    Pedestrian, citizen and/or vehicle contacts

            c.    All calls requiring the presence of a Crisis Intervention Team (CIT) officer

            d.    Reported weapons calls

            e.    All calls involving suicidal individuals

            f.    When engaging in a foot chase (if the BWC was not placed in EVENT mode

**Exhibit 6**

      prior to the foot chase, officers are required to place the BWC into EVENT mode as soon as the situation has stabilized and it is safe to do so)

    g. Any encounter that becomes adversarial

    h. When engaging in a forced entry

    i. To assist in documenting warrantless or consensual searches of individuals, vehicles, buildings, and other places

- The BWC will be utilized to record the request and consent. This recording is intended to enhance a documented consent; it is not intended to replace the use of the Consent to Search form (DPD 272).
- The existence of the recorded request will be documented in the officer's statement.
- The BWC can be used to record the search itself.

    j. To assist in documenting an individual's Miranda Advisement

- The BWC will be utilized to record the advisement and the subject's responses when practical. This recording is intended to enhance a documented consent. It is not intended to replace the use of Juvenile Advisement/Waiver Form (DPD 102) or the Advisement form (DPD 369).
- The existence of a recorded advisement will be documented in the officer's statement.

    k. All arrests and/or citations

    l. To assist in documenting the handling and inventory of currency, whether being submitted to the Evidence and Property Section or returned to a citizen

    m. Any situation that the officer believes the use of the BWC would be appropriate or would provide valuable documentation if not already activated per policy

    n. Upon active involvement in a vehicle pursuit, or if not actively involved, when assisting at its point of termination, including any perimeters, foot searches, and/or physical apprehensions – See OMS 204.01

    o. Metro/SWAT executing planned tactical operations

2. Once placed in EVENT mode, the BWC will remain on and not be turned off unless the initial incident that caused the activation has stabilized; upon request of the victim; or as ordered by a supervisor. For the purposes of this section, an incident is considered stabilized when the initial police response or exchange of communication related to police enforcement activities has transitioned to a controlled and orderly investigation.

    a. Officers will document the reason that the BWC has been deactivated in the form of a recorded announcement on the BWC prior to deactivation.

    b. If an officer is on a perimeter post or assigned to a static post where he/she is not in contact with citizens, involved in an enforcement action or actively part of the investigation, then he/she may deactivate the BWC to conserve battery life. The BWC will be reactivated if any of these fail to apply.

    c. Once the situation has stabilized, if it is necessary to discuss issues or concerns with an officer, supervisor, doctor, nurse, or paramedic in private, or if the information to be conveyed is not part of an investigative case, the BWC may be switched to BUFFERING mode. As soon as the private

**Exhibit 6**

        conversation is completed, the BWC will be returned to EVENT mode so long as the situation still falls under the definition of required use. Officers are reminded that when the BWC is placed back to EVENT mode, the prior 30 seconds of video (no audio) will be saved.

  b. Restricted use of the BWC system and/or stored media

    1. Officers will only use a BWC that has been approved and issued by the Denver Police Department. The use of personal video and/or audio recorders is prohibited.

    2. All audio, images and media associated with the BWC are the property of the Denver Police Department and these items are not to be copied, released, or disseminated in any form or manner outside the parameters of this policy without the expressed written consent of the Chief of Police. Under no circumstances will any employee of the Denver Police Department make a personal copy of any recorded event without the written consent of the Chief of Police (e.g. using a cellular telephone or other recording device to record BWC media). Lead investigators may create a secondary copy of a BWC recording subsequent to an official investigation and will ensure that the copy remains attached to the case file.

    3. Under no circumstance, except those instances involving an investigation of department personnel, will a conversation between department employees be recorded without all parties to the conversation knowing it is being recorded. Conversations that are not required to be captured as evidence in the furtherance of completing a police report and/or subsequent police investigation will not be recorded.

    4. The BWC will not be activated in places where a reasonable expectation of privacy exists (such as detox, medical, and/or healthcare facilities, locker rooms or restrooms, etc.) unless the activation is for official law enforcement activity such as a call for service or if policy requires the activation.

       a. Officers will only use the BWC in patient care areas of a healthcare facility and/or ambulances when the recording is for official purposes and caution should be used to record only the parties involved in the event being investigated.

    5. Officers will generally not activate a BWC while on the grounds of any public, private, or parochial elementary, middle, or high school, unless required by policy (e.g. call for service, class 2 action, etc.).

    6. Officers will not record confidential informants.

    7. Prior to conducting a strip search, the officer will record a 360-degree video of the location where the strip search will be conducted. During the actual strip search, the BWC will be utilized to only capture audio of the event by positioning the camera away from the individual to be searched (see OMS 104.01(8) for authorization).

    8. Officers are not authorized to playback BWC recorded media for citizen viewing.

    9. No personal use is allowed.

    10. Fixed Position Checkpoints:

       Officers assigned to a fixed position checkpoint will not be required to place the BWC into EVENT mode during the initial contact of drivers. Rather, officers will maintain their BWC in BUFFERING mode, and as soon as the officer develops reasonable suspicion to believe a crime is occurring or that any other required activation is present, as defined in section (3), the BWC will be activated.

**(4) OFFICER RESPONSIBILITIES:**

**Exhibit 6**

    a.    Officers will not use the BWC system or evidence.com until they have successfully completed the required training.

    b.    Officers will ensure the following when assigned a BWC at the beginning of each shift/tour of duty or off-duty detail:

        1.    In accordance with this policy, officers are not permitted to work either on or off-duty without a functioning BWC and are responsible for the care and maintenance of the BWC assigned to them. The BWC is to be operated and maintained per the manufacturer's instructions and recommendations.  Officers with BWC equipment that is unavailable to deploy (i.e., not functioning, appears to be broken, missing, etc.), <u>will immediately notify an on-duty district supervisor for direction and the HALO Command Center for immediate repair/replacement</u>.  NOTE:  HALO operates from 0700 to 0300 hours (if after hours, on-call staff may be contacted through Denver 911).

        2.    The BWC will be properly affixed upon the officer's uniform in accordance with departmental regulations and manufacturer's guidelines.  The camera will only be mounted on the officer's uniform with the department approved collar, helmet, head, and sunglass mounts.  Any modification to the BWC unit or mounting is prohibited.  Each officer will ensure that their camera is positioned correctly and verify the camera position by use of the viewer.  The BWC must be worn for the entire shift.

        3.    Under normal operation, the BWC's audible alert signal must remain in the ON position.  The audible alert signal may be muted for tactical situations; however, the audible alert signal must be immediately reactivated after the tactical portion of the incident.

        4.    To record all situations required by this policy, the officer must maintain the BWC in a constant state of operational readiness. Operational readiness means that the BWC has adequate battery life/available storage, remains properly affixed to the officer's uniform and is set to BUFFERING mode.

        5.    When not wearing the BWC system, officers will ensure that the BWC is stored in a secure location.

    c.    Officers will document the use of the BWC within reports, citations, log sheets, arrest book-ins, and/or street checks within the first line of any text entry.

    d.    Officers are encouraged to notify the public that the BWC is activated and recording. Under most circumstances, notification has shown to diffuse incidents.  However, there may be times that this is impractical or that the notification could diminish lines of communication.  Officer discretion should be utilized and generally favor notification over non-notification.

        1.    Officers should notify crime victims and persons wanting to anonymously report a crime that they are being recorded as soon as it is safe to do so.

        2.    Unless use of the BWC is necessary for an officer's safety, the safety of others, or to ensure an accurate account of an event, when a person <u>wants to anonymously report a crime or assist in an ongoing investigation</u>, the officer will ask the person if they want the officer to discontinue use of the BWC.  If the person states yes, the officer will immediately announce the reason for the deactivation and turn off the BWC.

        3.    When persons who are recorded request anonymity, officers will note this in written reports and make a verbal statement for the BWC.

    e.    Officers are authorized to review their own BWC recording when preparing official written documentation of a specific event. Officers may only review recordings from their assigned BWC. The viewing will be utilized as a tool when completing written reports to ensure

**Exhibit 6**

accuracy. The following are exceptions to the above:

1. If the officer is involved in (or witness to) a use of force incident that per policy requires the response of an Internal Affairs Bureau investigator, the officer may be authorized to view their BWC recording after the Internal Affairs Bureau investigator has been consulted. The viewing of any BWC recording will only be permitted after receiving authorization from the Internal Affairs Bureau investigator acting under the direction of the commanding officer of the Internal Affairs Bureau.

2. If the officer is involved in (or witness to) a critical incident such as a police shooting, an in-custody injury resulting in death or other critical incident as defined in the Operations Manual, the officer is authorized to view their BWC recording only after the approval of the commander of the Major Crimes Bureau (or designee).

f. Officers will appropriately tag each recorded video.

1. I.D. section: The recording officer will enter the GO/CAD number in the following format:

   *Two-digit year – GO/CAD number (e.g., 15-123456)*

2. Category section: The officer will select the most appropriate category from the drop-down menu.

   - Death Investigation: Homicide, Known/Unknown Dead, In-Custody Death, Arson Investigation resulting in death, Vehicular Homicide, Hit and Run resulting in death. This category includes the attempt of any of the listed crimes.

   - Sex Assault on a Child: Sex Assault on a Child. This category includes the attempt of the listed crime.

   - Missing Person/Kidnapping: Missing Person and Kidnapping. This category includes the attempt of the listed crimes and excludes runaways.

   - Sexual Assault: Sexual Assault. This category includes the attempt of the listed crime.

   - Felony – Other: Robbery, Felony Assaults, Arson not resulting in death, Child Abuse, Burglary, Felony Theft, Auto Theft, Theft from Motor Vehicle and any other felony crime not designated under any other listed/available category.

   - GO Created: Any misdemeanor crime, any time a GO report is created, a citation is issued or an arrest occurs that does not fit under any other listed category. This category includes both state misdemeanors and municipal violations.

   - Fraud/Forgery – Fraud and Forgery. This category includes the attempt of the listed crime.

   - Private – This is a secondary category to be used in conjunction with any of the other listed categories. This category should only be added at the direction of an investigative or supervisory officer.

   - Non Event – All Other: All contacts that do not result in an arrest or citation being issued, does not result in a GO report and does not fit any other listed category. (e.g., neighbor disputes, street checks, traffic warning, accidental activation)

3. Title section: If a use of force occurred, the officer will enter "UOF". If an arrest occurred, the officer will enter "ARST".

**Exhibit 6**

- Officers are encouraged to enter additional useful information in the Title section. An example would be the location of the incident and/or the suspects name and date of birth. This is not required; however, it is strongly encouraged.

g. Uploading of BWC media to the Evidence Transfer Manager (ETM):

1. <u>Regular on-duty assignment and/or regular on-duty assignment in conjunction with secondary employment</u>:

    Immediately following an on-duty assignment (or after the total hours if worked in conjunction with secondary employment), officers will upload BWC data by placing the BWC into the department ETM at their work assignment, or at their residence (within two hours) using the department issued docking station.

2. <u>Secondary employment not in conjunction with any on-duty assignment</u>:

    Immediately following secondary employment (within two hours), officers will upload BWC data by placing the BWC into a department ETM or department issued ETM.

3. Once placed into an ETM, the BWC will not be removed until the media has been fully uploaded.

4. If evidentiary media exists on the BWC and there will be a significant delay (more than two hours) in uploading the BWC to an ETM, officers will notify an on-duty supervisor.

**(5) INVESTIGATIVE RESPONSIBILITIES:**

a. Investigators will not use the BWC system or evidence.com until they have successfully completed the required training.

b. When assigned a case for investigation, the assigned investigator will:

1. Determine the identity of all involved officers.
2. Search evidence.com for any associated BWC media, using multiple search parameters to verify that they have located all relevant files.
3. Create a digital media file "folder" within evidence.com. The investigator will add all relevant/associated BWC media into the folder.
4. Verify the accuracy of the category section, ensuring it is in accordance with the correct Colorado Revised Statute. If the category section is incorrect, the investigator is responsible for entering the correct category (see section (4) f).
5. View all of the applicable BWC media and will notate in their supplemental report that BWC media does exist.

**(6) SUPERVISOR RESPONSIBILITIES:**

a. Supervisors will not use the BWC system or evidence.com until they have successfully completed the required training.

b. When an incident arises that requires the immediate retrieval of BWC media for chain of custody purposes (including, but not limited to: serious crime scenes, officer involved shootings, critical incidents or other incidents as determined by policy/supervision) a supervisor will respond to the scene and ensure the BWC remains affixed to the officer in the manner it was found and that the BWC data remains uncompromised. Through direct and uninterrupted supervision, the supervisor is responsible for the care and custody of the BWC until it has been removed and secured by the lead investigator.

c. Supervisors are required to review BWC media under the following circumstances and/or when the following reports are generated.

1. Use of Force Report (DPD 12)
2. Injury While in Custody and Injury Prior to Arrest Report (DPD 12I)

**Exhibit 6**

   3. Forced Entry Report (DPD 460)
   4. The supervisor is investigating a specific act of officer conduct.
   5. The officer has been placed on a performance improvement plan to address identified behavioral or performance deficiencies.
   6. BWC media can be reviewed for both commending and counseling officers.
   7. Requests to review BWC recordings outside of these parameters must be made to and approved by the officer's commander or above.
   8. The aforementioned is not meant to limit or restrict the Department's review as part of an official investigation.
   9. Reviews of BWC media that determine it was not activated per policy may result in discipline for the involved officer.
  d. Documentation:
   1. When applicable DPD reports are generated, documentation will include whether the BWC media was reviewed and a synopsis of what is contained in the recording. If an incident did not generate any BWC media or if the BWC media has no value, supervisors will document why and the circumstances.
   2. In circumstances where a DPD report is not generated, supervisors may document the review and synopsis of BWC media with a journal entry.
  e. When a supervisor is notified of a malfunctioning camera, the supervisor will ensure that the camera is operational prior to re-deploying the camera. If the supervisor is unable to deploy the camera, directions stipulated in section (4)b1 will be followed. In exigent circumstances, a command officer may authorize the officer to work without a BWC system. If an officer's direct report command officer is unavailable, the supervisor may contact another on-duty district command officer.
  f. All officers, with the rank of lieutenant or higher, will have access to view BWC media in evidence.com for the officers assigned to their respective assignments, except for cases that have restricted access. All viewing of BWC media in evidence.com is documented in an online audit trail.

**(7) OFF-DUTY BWC SYSTEM RESPONSIBILITIES:**
 a. Officers working off-duty in uniform will follow the same procedures as stated in section (4).
 b. Officers working department paid off-duty assignments in conjunction with their on-duty shift will place the BWC into the ETM after working both shifts.

**(8) BWC SYSTEM ADMINISTRATOR RESPONSIBILITIES:**
The BWC system is administered by the Investigative Technology Section, they are responsible for:
 a. Ensuring that officers are trained in the use of the BWC system and equipment prior to issuance.
 b. Ensuring that the BWC equipment meets the standards and requirements of the Denver Police Department.
 c. Providing administrative support regarding the BWC system.
 d. Assigning personnel for the purpose of "sharing" BWC digital media evidence with both the District Attorney's and the City Attorney's Office. All requests for evidence will be in writing from the respective agency.
  1. Requests from the District Attorney's Office:
   - All BWC digital media evidence will be shared with the District Attorney's Office once cases have been accepted for filing in court. This includes privatized and restricted access video.

**Exhibit 6**

- Personnel will locate the BWC digital case folder that was created by the investigator in evidence.com and "share" the BWC digital case folder with the currently approved District Attorney's Office user group identified within evidence.com.
- Any subsequent BWC digital media evidence will be added to the case folder and shared with the District Attorney's Office.

2. Requests from the City Attorney's Office
- These incidents are typically not investigated by a detective or other investigator and the BWC digital media folder will be created by HALO (see section 5(b) above). The BWC media needs to be added to the newly created digital media case folder and then "shared" with the currently approved City Attorney's Office user group identified within evidence.com.

e. Assisting in data collection reporting. These reports include, but are not limited to, monthly usage audits, video storage audits, viewing audits and other audits as requested.

f. Providing technical support for malfunctioning BWC equipment and facilitate all warranty repairs with the vendor.

(9) **DATA MANAGEMENT AND FILE RETENTION:**

a. All recorded BWC media will be uploaded and retained in evidence.com in accordance with the current retention schedule. The retention of all BWC media will comply with all applicable State of Colorado statutory requirements regarding criminal justice record management and evidence retention and will be based upon the current City and County of Denver General Records Retention Schedule. All BWC media will be purged from the system in accordance with the current retention schedule.

(10) **AUTHORIZED REVIEW AND DISCLOSURE:**

a. Access to all BWC stored media will be restricted to authorized users and the viewing of any BWC footage will be restricted to legitimate law enforcement or administrative purposes.

1. BWC recordings will not be reviewed by anyone outside of the involved officer's chain of command except as outlined in this policy. Any other review (video and/or audio) of BWC recordings must have prior approval from the Chief of Police (or designee).
2. All officers are accountable for each BWC video/audio review and will be required to justify the reason for accessing the recording. All viewing of BWC media in evidence.com is documented with an online audit trail.
3. BWC recordings will not be accessed for personal gain or entertainment.

b. Any request for BWC media made from outside the Denver Police Department, including other law enforcement agencies, the District or City Attorney's Office, and/or any city agency will comply with both the records disclosure and records management policies of the department (See OMS 109.04 and 109.05).

(11) **AFTER EVENT TRAINING VALUE:**

When a BWC recording may have training value, the incident CAD number and a brief description of the event will be forwarded by the submitting officer through the chain of command to the Chief of Police. The Chief of Police will forward the request to the Training Section for review to determine value and relevancy of the recording for training purposes, and to ensure it conforms to current training protocol. The Chief will determine if there are any potential adverse effects of using the video.

a. The Training Section will determine the benefit of using the BWC recording versus other training curriculum and forward their recommendation to the Chief of Police.

**Exhibit 6**

- b. The involved officer(s) will be notified when BWC recording is being considered for training use. The officer(s) may submit any concerns about the use of the video through their chain of command to their deputy chief.
- c. Recordings may be used for training purposes only after any criminal case is adjudicated, and any other administrative review is complete.
- d. Recordings will not be used to embarrass or ridicule officers or the public.

**(12) VIOLATIONS:**

Failure to adhere to the recording requirements of this policy will result in the following discipline and actions:

- a. 1st violation in a 12-month period: Oral reprimand, and:
    1. Mandated officer review of entire BWC policy,
    2. Follow up meeting with supervisor to discuss key points,
    3. Journal entry.
- b. Breaches of BWC policy prior to the date of occurrence of the 1st violation will not be counted as additional violations.
- c. 2nd violation in a 12-month period: Written reprimand
- d. Concurrent with the second violation, an in-depth audit of the officer's data usage will be conducted and documented by the Performance Development Unit, and will generate a formal Personnel Assessment System (PAS) review. If the audit identifies other potential violations, it may result in an additional investigation, discipline, and/or corrective training.
- e. 3rd Violation in a 12-month period: 1 fined day
- f. Purposeful, flagrant, or repeated violations will result in more severe disciplinary action. At any time during review, if deemed necessary, violations can be removed from the scheduled discipline above and transitioned to a formal investigation governed by the discipline matrix.

### 119.05 MOBILE FINGERPRINT DEVICES

**(1) DESCRIPTION:**

A handheld device used by an officer that can capture an individual's fingerprint in the field and provide a rapid positive identification to the officer. The possible identifications will be limited to subjects maintained in the searched database and does not preclude a record from existing in another database. The mobile devices are only an aid to the identification of a person and will not be used as the sole grounds for establishing probable cause for arrest.

**(2) POLICY:**

The device(s) will be assigned to a district station, Traffic Operations Section, Airport Police Bureau, or a specialized unit/section. The device(s) will not be assigned to a specific officer, but made available to on-duty officers throughout all shifts. The mobile fingerprint device will only be used by personnel who have received training in the proper use of the equipment. An officer must be able to articulate and justify the authorized and appropriate use of the mobile fingerprint device based on policy, training, officer experience and assessment of the circumstances. The device will be issued by a supervisor to an officer at the beginning of a shift and returned to a supervisor at the end of a shift.

- a. Officers will not take fingerprints without an individual's consent, including:
    1. During a consensual contact or a reasonable suspicion stop, unless there is probable cause to arrest.
    2. When issuing a traffic citation that is not an arresting offense.
    3. When issuing a civil marijuana ticket.

**Exhibit 6**